IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CURTIS HIGHTOWER,

       Plaintiff,                      No. 2:08-cv-00228 MCE EFB P

     vs.

HIGH DESERT STATE PRISON, et al.,

       Defendants.              FINDINGS AND RECOMMENDATIONS

    Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. The remaining defendant in this action, Patton, moves for summary judgment. Dckt. No. 97. For the reasons that follow, the undersigned recommends that the motion be denied.

**I.    Background**

    This action proceeds on the verified amended complaint filed on December 14, 2009. Dckt. No. 29. Plaintiff attests that defendant used excessive force against him on March 6, 2007. *Id.* at 3-7.[1] Specifically, plaintiff alleges that defendant escorted plaintiff out of a single-man holding cage at High Desert State Prison ("HDSP") on that date. Plaintiff alleges that the

---

[1] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

1

defendant, while applying handcuffs to plaintiff, said "Let me show you something." *Id.* at 4. Plaintiff claims that he turned his head slightly to see defendant drop the right hand of the cuffs and that defendant then twisted plaintiff's left arm with the cuff on it, pulling plaintiff's arm out of the cage and lifting it upwards, which caused plaintiff's shoulder to get pinched by the opening of the cage. *Id.* Plaintiff asserts that because this position was very painful, he reflexively pulled his right hand into the cage. *Id.* Allegedly, defendant then yelled, "Put your hand back out of the cage!" *Id.* Plaintiff then responded, "I can't, I can't!" *Id.* But then, painfully, plaintiff was able to put his hand back out. *Id.* at 4-5. Defendant eased on plaintiff's arm and backed him out of the cage, fully handcuffed. *Id.* at 5.

According to the complaint, Correctional Officer Gullion escorted plaintiff a short distance while defendant yelled at him from behind. *Id.* Plaintiff did not realize defendant was yelling at him until he turned his head slightly to check. *Id.* Defendant then said, "Bring him back!" *Id.* Gullion brought him back, and defendant "got an attitude" with plaintiff, "yelling one thing or another." *Id.* Defendant and Gullion placed plaintiff's chest and face against the window of the "MTA" office, with plaintiff's feet about a foot from the wall to avoid stepping on some boxes. *Id.* Plaintiff tilted his head back to look left and right, "but *never* with an attitude towards an Officer." *Id.* at 5-6 (emphasis in original). Defendant told Gullion to "take him to the ground," which both officers then did. *Id.* at 6.

Plaintiff says he felt weight and pressure on his back with his legs held up in a "hog tie" type of position." *Id.* Plaintiff started to yell, "What the fuck, what the fuck!" *Id.* Defendant and Gullion responded, "Stop resisting!" *Id.* Plaintiff, however, was not able to resist from the "hog tie" position. *Id.* Plaintiff started to breathe heavily with the weight on his back and felt a surge of adrenaline, which caused him to drool onto his face. *Id.* He did not spit or try to spit on either officer. *Id.*

Defendant punched plaintiff around his left eye with a closed fist, yelling, "Stop spitting, stop spitting!" *Id.* Defendant punched plaintiff again in the same location. *Id.* Plaintiff yelled,

"I'm not spitting, what the fuck! Stop! I'm sorry." *Id.* Plaintiff held still, but defendant punched him again, six or seven times total. *Id.* Defendant and Gullion had plaintiff's legs lifted so high that his chin scraped the concrete as he turned his head between each punch. *Id.* Defendant then struck plaintiff hard with his knee, twice. *Id.* at 7. Plaintiff "felt a big thud" on his head and a "big crack" around his eye. *Id.* Plaintiff's eye swelled shut and blood dripped down his face and shirt to the ground. *Id.*

Plaintiff's eye injury required surgery with a lengthy recovery and allegedly it is permanently damaged. *Id.*

According to defendant, during the incident in question he "had to use force against [plaintiff] to defend myself." Decl. of W. Patton ISO Def.'s Mot. for Summ. J. (hereinafter "Patton Decl.") ¶ 2. Defendant's account of the incident is that plaintiff resisted defendant's and Gullion's attempts to restrain him. *Id.* ¶ 3.

> To control Hightower and prevent further resistance, Officer Gullion and I had to take Inmate Hightower to the floor. After hitting the floor, Officer Gullion straddled Hightower and I maneuvered around in front of Hightower. Hightower then tried to break free from our holds by attempting to twist and turn away from them and wiggle away from our grasp. Hightower's attempt to free himself from our hold caused me concern because I did not know what Hightower was thinking or where Hightower was going to go, and Hightower was not complying with our orders. Several times, I ordered Hightower to "stop resisting." Hightower then attempted to roll over onto his back, and I tried to turn him down. At that point, Hightower turned up and spit at me. To stop further spitting, I punched Hightower by bringing my right hand to stomach level, extending it out to strike Hightower, and bringing it back. I ordered Hightower to stop spitting. Due to Hightower's facial expressions, I believed he was going to spit again. Therefore, I punched him a second time. This whole incident took place before I could pull out my pepper spray canister or baton out of the holster. After the second punch, the rest of the staff piled on top of inmate Hightower. Hightower was still kicking but the staff was able to get Hightower to comply based on the fact that he had five people on top of him.

*Id.* ¶¶ 4- 14.

Plaintiff was charged with a rule violation (battery on a peace officer) for his conduct during the incident. Decl. of C. Demant ISO Def.'s Mot. for Summ. J. (hereinafter "Demant Decl."), Ex. A. The hearing officer found him guilty based on: (1) a disciplinary report filed by

3

a Correctional Officer M. Ackernecht, who wrote that, as he assisted Gullion and defendant in subduing plaintiff, plaintiff kicked him five times, (2) a report by a Lieutenant Cummings who wrote that defendant saw plaintiff kick Ackernecht forcibly on his upper body with enough force that it hit him backwards, (3) a medical report documenting plaintiff's injuries, which the hearing officer found consistent with the description of the incident in the rules violation report, and (4) the hearing officer's finding that plaintiff's testimony that he did not intend to resist was not credible in the face of evidence that plaintiff kicked Ackernecht five times. *Id.* Plaintiff was assessed 150 days of lost credit. *Id.*

## II.     Motion for Summary Judgment

### A.   *Summary Judgment Standards*

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if

any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is

material is determined by the substantive law applicable for the claim in question. *Id.*  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue. *Celotex.*, 477 U.S. at 323. Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Concurrently with the motion for summary judgment, defendant served plaintiff with a notice that advised him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dckt. No. 97; *citing Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

B. *Analysis*

Defendant argues that plaintiff's suit is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997), because it necessarily conflicts with and challenges the disciplinary finding that plaintiff committed a rules violation.

The Supreme Court noted in *Heck* and earlier in *Preiser v. Rodriguez*, 411 U.S. 475 (1973) the historic role of the writ of habeas corpus as the vehicle for a confined individual to attack the legality of his or her custody and obtain release and concluded that, because the habeas statute dealt specifically with such a situation, it must be utilized rather than the more general § 1983 where a prisoner attacks (1) the fact of confinement or (2) the duration of confinement. *Id.* at 484-500.

In *Heck*, the Court further clarified what suits may not be brought under § 1983 but must instead be pursued via petition for writ of habeas corpus. 512 U.S. 477 (1994). There, the court held that a state prisoner may not bring a damages claim under § 1983 attacking the constitutionality of his criminal conviction unless and until the underlying conviction is

7

invalidated via habeas corpus or similar proceeding, because success in the § 1983 damages action would necessarily establish the invalidity of the conviction and attendant confinement. *Id.* at 478, 486-87. The Court emphasized that this rule, sometimes referred to as the "favorable termination rule," applies only where success in the civil rights suit would necessarily imply that the conviction or sentence were invalid. *Id.* at 486-87 and n. 6-7.

The Court took up the interplay between federal civil rights actions and writs of habeas corpus again in *Edwards v. Balisok*, 520 U.S. 641 (1997). In that case, the Court clarified that the favorable termination rule applies to a state inmate who challenges a disciplinary action for which he was assessed a credit loss, even where the inmate seeks no injunction restoring the lost credits, if success in a civil rights action would necessarily imply that the credits should not have been revoked. *Id.* at 643-44, 646-47.

Conversely, in *Muhammad v. Close*, 544 U.S. 749 (2004), an inmate could challenge his pre-disciplinary hearing detention under § 1983 without first invalidating the discipline imposed, because success in the action would not show his underlying criminal conviction to be invalid nor shorten the duration of his sentence by requiring the restoration of revoked credits. The Court clarified that *Heck*'s favorable termination rule does not apply categorically to all suits challenging prison disciplinary proceedings. *Id.* at 754. Prison disciplinary proceedings do not implicate the validity of the "fact of confinement" (*see Preiser*, 411 U.S. at 500) because "these administrative determinations do not as such raise any implication about the validity of the underlying conviction[.]" *Muhammad*, 544 U.S. at 754. Such proceedings *may* implicate the "duration of confinement" (*see Preiser*, 411 U.S. at 500), if credits were revoked. *Muhammad*, 544 U.S. at 754. Because the plaintiff in *Muhammad* lost no credits as a result of the discipline imposed, and because prison disciplinary hearings by their nature do not address the underlying conviction, the plaintiff's § 1983 action could not be "construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." *Id.* at 754-55.

8

In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Court surveyed the line of cases beginning with *Preiser* in determining that inmates challenging state parole procedures could proceed under § 1983. While the prisoners' ultimate goal was arguably to obtain speedier release under more favorable parole procedures, their success in obtaining such procedures in their § 1983 suit would not *necessarily* mean speedier release – parole was not guaranteed under the different procedures. *Id.* at 82. The Court emphasized that the favorable termination rule is limited to situations in which success in the § 1983 action would *necessarily* invalidate confinement or its duration. *Id.* at 81-82; *see also Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (noting that the Court has "stress[ed] the importance of the term 'necessarily.'").

The Court reiterated the availability of § 1983 where success in the suit would not necessarily invalidate the prisoner's underlying conviction nor shorten his sentence in *Skinner v. Switzer*, ___ U.S. ___, 131 S. Ct. 1289, 1298-99 (2011). There, it held that a state prisoner seeking DNA testing of crime-scene evidence could assert his claim under § 1983, even though his ultimate aim was to use the evidence to support a claim of innocence. *Id.* at 1293. Success in the § 1983 suit would only provide the inmate with access to the DNA evidence, which could prove to be inculpatory, exculpatory, or neither. *Id.* The Court noted that none of its cases "has recognized habeas as the sole remedy, or even an available one, where the relief sought would neither terminate custody, accelerate the future date of release from custody, nor reduce the level of custody." *Id.* at 1299 (citing *Wilkinson*, 544 U.S. at 86, Scalia, J., concurring, internal quotation marks omitted) & 1299 n.13.

Returning to the facts of this case, defendant argues that plaintiff's claim is barred because a finding in his favor would be fundamentally inconsistent with the disciplinary conviction. Defendant appears to argue that a disciplinary finding that has not been overturned will always bar a subsequent § 1983 based on the same underlying incident, regardless of whether credits have been revoked. That argument fails, as the U.S. Supreme Court has made clear that the "conviction" with which a § 1983 suit must not conflict is the underlying criminal

9

conviction, not a disciplinary finding. *Muhammad*, 544 U.S. at 754-55. Success in this action would not imply the invalidity of plaintiff's criminal conviction, and accordingly the factual findings made by the disciplinary hearing officer do not bear on the viability of this § 1983 action under the *Heck* rule.

However, plaintiff in this case did suffer a credits loss. Plaintiff offers no evidence that he has obtained an order invalidating the revocation of credits. In such a situation, *Heck* and its associated cases bar suit where a finding in the plaintiff's favor will necessarily imply the invalidity of the revocation of credits, thus necessitating the restoration of those credits and a consequent speedier release from prison. *Edwards*, 520 U.S. at 643-44, 646-47.

In *Heck*, the Court repeatedly emphasized that a § 1983 claim is not cognizable only where a judgment in the plaintiff's favor would *necessarily* imply the invalidity of his conviction or the duration of his sentence. 512 U.S. at 481-82, 487, 487 n.6-7. To illustrate the principle, the Court provided two examples. In the first, the hypothetical plaintiff sustained a conviction for resisting arrest – defined as intentionally preventing a peace officer from effecting a *lawful* arrest. *Id.* at 487 n.6 (emphasis in original). A subsequent § 1983 action premised on violation of the plaintiff's right to be free from unreasonable seizures would not be cognizable, because, to prevail, the plaintiff would have to negate an element of the offense of conviction (that the arrest had been lawful). *Id.* Thus, success in the § 1983 action would imply the invalidity of the conviction. In the second example, the hypothetical plaintiff suffered a conviction based on evidence obtained during a police search. *Id.* at 487 n.7. The plaintiff's subsequent § 1983 action challenged the search as unreasonable. *Id.* Because the evidence could have been admissible in the criminal trial even if the search was unreasonable under doctrines like independent source and inevitable discovery, a judgment for the plaintiff in the § 1983 action would not *necessarily* invalidate the conviction. *Id.*

Here, a finding that defendant's use of force was excessive in violation of the Eighth Amendment would not necessarily imply the invalidity of the disciplinary finding of battery. To

succeed on an excessive force claim, plaintiff must establish that defendant unnecessarily and wantonly inflicted pain. *Whitley v. Albers*, 475 U.S. 312, 320 (1986).  On the evidence currently before the court, a factfinder could conclude that, even though plaintiff committed battery on an officer, defendant nevertheless subjected plaintiff to unnecessary and wanton pain. *See id.* at 321 (noting that the following factors are relevant to a determination of whether a use of force violated the Eighth Amendment: (1) the need for the use of force; (2) the relationship between the need for force and the amount used; (3) the extent of injury inflicted; (4) the extent of the threat the officers reasonably perceived the plaintiff to pose to staff and inmate safety; and (5) any efforts made to temper the severity of the forceful response).  The disciplinary hearing officer here made no finding that the amount of force used by defendant was necessary to subdue plaintiff, and a correctional officer is not free to use whatever amount of force he or she wishes to subdue the individual once a prisoner resists. *See Whitley*, 475 U.S. at 321.  Accordingly, it is possible on the evidence presented by both sides in this case for a factfinder to conclude that plaintiff committed battery but that defendant nevertheless used an unconstitutionally excessive level of force in response.[2]  Such a finding would not invalidate plaintiff's disciplinary conviction.  Accordingly, as a judgment for plaintiff on his Eighth Amendment claim would not necessarily imply the invalidity of the disciplinary revocation of credits, that claim is not barred by *Heck*.

Defendant next argues that summary judgment is appropriate because plaintiff cannot show that defendant unnecessarily and wantonly subjected him to pain (i.e., that defendant's use of force was unreasonable).  The evidence on this point is entirely disputed.  Defendant attests that he punched plaintiff twice only because plaintiff was forcefully resisting efforts to restrain him and because plaintiff spit at him. Patton Decl. ¶¶ 3-14.  Plaintiff attests that he did not forcefully resist defendant nor spit at him but that defendant nevertheless punched him six or

---

[2] The two are not mutually exclusive.  Indeed, the former could well incite or motivate the latter.

seven times and came down on plaintiff's face with his knee twice. Dckt. No. 29 at 5-8. Whichever version is to be credited will have to be determined at trial. Viewing the evidence in the light most favorable to plaintiff, a factfinder could conclude that defendant's use of force was excessive in violation of the Eighth Amendment.

Lastly, defendant argues that he is entitled to qualified immunity because no right was violated, and if it was, it was not clearly established. Dckt 98 at 16; *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The argument for qualified immunity is predicated on defendant's version of the facts (that plaintiff was resisting and spitting) which plaintiff disputes in material regards. As set forth above, the evidence viewed in the light most favorable to plaintiff may establish a constitutional violation. Moreover, the right of a prisoner to be free from excessive force has been clearly established for decades and, assuming plaintiff's version as true, a reasonable officer in defendant's position would know that using the force alleged here violates the constitution. Thus, the issues of qualified immunity are intertwined with the disputed issues of material fact as to the merits of the alleged constitutional violation. Accordingly, defendant is not entitled to summary judgment based on qualified immunity.

**III.    Order and Recommendation**

For the reasons stated above it is hereby RECOMMENDED that defendant's February 16, 2012 motion for summary judgment (Docket No. 97) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

////

////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 4, 2012.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE